*Kapneck 14-16, LLC v. Bkeezy's Speakeasy, LLC*, No. 33, September Term, 2025. Opinion by Gould, J.

**LANDLORD-TENANT LAW – SUMMARY EJECTMENT UNDER REAL PROPERTY § 8-401 – ENFORCEABILITY OF WAIVER OF RIGHT OF REDEMPTION IN NONRESIDENTIAL LEASES**

The Supreme Court of Maryland determined that a clause in a nonresidential lease waiving the statutory right of redemption does not violate Maryland's public policy. In the absence of any other contract defense, a waiver of the right of redemption is enforceable.

**LANDLORD-TENANT LAW – SUMMARY EJECTMENT UNDER REAL PROPERTY § 8-401 – TENANT'S RIGHT TO NOTICE**

The Supreme Court of Maryland determined that the pre-suit notice requirement in Real Property Article subsection 8-401(c)(1) is, pursuant to its plain text, applicable only to residential tenancies. Thus, subsection 8-401(c)(1) is not operative in a nonresidential tenancy. Nevertheless, a landlord may be awarded possession in a section 8-401 action only for rent that is due and unpaid under the terms of the lease. Therefore, a summary ejectment action cannot be predicated on charges that the tenant learns of for the first time after suit is filed.

IN THE SUPREME COURT

OF MARYLAND

No. 33

September Term, 2025

_____

KAPNECK 14-16, LLC

v.

BKEEZY'S SPEAKEASY, LLC

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.
Watts, Eaves, and Killough, JJ.,
concurs and dissents.

_____

Filed: April 29, 2026

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

This case concerns a commercial tenant's rights under Maryland's summary ejectment statute. After a beer and wine store failed to pay certain lease obligations, the landlord filed a summary ejectment action, seeking repossession. Although the tenant was current with its base rent, the landlord argued that the tenant failed to pay various charges—real estate taxes, water and sewer bills, late fees, HVAC replacement costs, and attorneys' fees—that the lease defined as additional rent. Except for one such charge, the District Court agreed with the landlord and relying on the lease's waiver of the statutory right of redemption, entered judgment in favor of the landlord for possession with no right of redemption.

The circuit court vacated that judgment and remanded for further proceedings. The court held that the District Court erred in including all of the landlord's claimed attorneys' fees in its tally of due and unpaid rent. The court also determined that the tenant had not received proper notice of some of the charges on which the landlord based its summary ejectment complaint and therefore concluded that the lease's waiver of the right of redemption was unenforceable.

We granted certiorari to decide, *first*, whether a nonresidential landlord may obtain possession under Real Property § 8-401 without providing the tenant with pre-suit notice under subsection (c) thereof, and *second*, whether the waiver of the right of redemption is enforceable in a nonresidential tenancy.

Taking these questions in reverse, we hold that a lease clause waiving a nonresidential tenant's statutory right of redemption does not violate Maryland's public policy and is, therefore, enforceable here. We further hold that, although Real Property § 8-401(c)(1)'s notice requirement is limited to residential leases, a landlord may be awarded

possession only for the failure to pay rent that is due and unpaid under the terms of the lease, and therefore, a summary ejectment action cannot be predicated on additional rent charges about which the tenant learns for the first time after the action is filed. Accordingly, we vacate the judgment of the circuit court and remand for further proceedings consistent with this opinion.

I

A

At common law, a landlord's recourse against a tenant for failure to pay rent was an ejectment action, a time-consuming and cumbersome proceeding. *Velicky v. Copycat Building LLC*, 476 Md. 435, 450 (2021) (citing *Brown v. Housing Opps. Comm'n of Montgomery Cnty.*, 350 Md. 570, 578 (1998)). In 1937, the General Assembly enacted the predecessor of today's section 8-401 of the Real Property Article, *id.* at 448-53 (tracing the history of the ejectment action), which established an expedited procedure for a landlord to recover possession when "the tenant shall fail to pay the rent thereunder when due and payable," MD. CODE PUB. GEN. L., ART. 53, § 24B (1937).

A landlord begins a section 8-401 action by filing a complaint in the District Court, describing the property, identifying the tenant, stating the amount of rent and any late fees due and unpaid, and requesting repossession, and, if desired, a money judgment. MD. CODE ANN., REAL PROPERTY ("RP") § 8-401(b)(2)-(3) (2023 Repl. Vol.). The trial is to be "held on the fifth day after the filing of the complaint[.]" *Id.* § 8-401(b)(4)(i). No discovery is permitted. Md. Rule 3-711(a).

If the court determines that rent or late fees are due and unpaid, it must determine the amount due, award the premises to the landlord, and, if authorized, enter a money

2

judgment. RP § 8-401(e)(2)-(3). Summary ejectment is "unlike any other litigation procedure in Maryland" due to its speed, lack of pretrial discovery, and other procedural limitations. *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 624 (2024). The proceeding is designed for a "relatively straightforward calculation" of rent due. *Shum v. Gaudreau*, 317 Md. 49, 60 (1989).

The General Assembly recognized that residential and nonresidential tenancies implicate different policy considerations and tailored the statute accordingly. Some differences are procedural, and others are substantive. For starters, the service of process provisions are different. While residential tenants are served by the sheriff, nonresidential landlords may elect to have process served by "any person authorized under the Maryland Rules to serve process[.]" RP § 8-401(b)(5)(i), (b)(6)(i). Thus, nonresidential landlords enjoy a measure of flexibility in determining who will serve the tenant with process that residential landlords do not enjoy.

Residential landlords are also subject to a pre-suit notice requirement. Under RP § 8-401(c)(1), a landlord must give residential tenants written warning of the landlord's intent to seek a summary eviction and inform the tenant of its right to cure the default before the landlord files the action. The statute requires no such forewarning for nonresidential tenants.

On the substantive front, "rent" for residential tenancies under section 8-401 is limited to the "fixed, periodic payments a tenant is obligated to pay for use or occupancy of the leased premises." *Westminster Mgmt.*, 486 Md. at 625. Parties to a nonresidential lease, however, are not subject to that limitation on the meaning of "rent" and thus enjoy more contractual freedom.

3

Section 8-401 also treats money judgments differently for residential and nonresidential tenancies. In residential cases, if requested in the complaint, a money judgment for rent, late fees, and costs may be entered, but only if the tenant was personally served. RP § 8-401(e)(2)(iv). In nonresidential cases, if requested in the complaint, a money judgment for rent, late fees, and, if the lease so provides, attorneys' fees, is permissible if (1) the tenant is personally served or (2) the tenant consents to the court's jurisdiction by appearing to defend the action and failing to assert that the appearance is limited to "the purpose of defending an in rem action[.]" *Id.* § 8-401(e)(2)(v), (vi).

Notwithstanding these distinctions, section 8-401 affords both residential and nonresidential tenants two procedural off-ramps to avoid eviction—one pre-judgment and the other post-judgment. *First*, after the District Court determines the amount of rent and late fees that are due and unpaid, but before entry of judgment, the tenant may tender the rent, late fees, and costs of the suit to the landlord, in which case "the complaint against the tenant shall be entered as being satisfied." *Id.* § 8-401(e)(5). *Second*, if the tenant passes on that opportunity and judgment is entered, it can redeem the premises by tendering payment of "all past due amounts . . . plus all court awarded costs and fees, at any time before actual execution of the eviction order." *Id.* § 8-401(h)(1).

With these features of a summary ejectment proceeding in mind, we turn to the facts and procedural history of this case.

B

Kapneck 14-16, LLC ("Landlord") rented commercial space at 14 N. Market Street, Frederick, Maryland ("Premises") to Bkeezy's Speakeasy, LLC ("Tenant"), under an Agreement of Lease ("Lease"), dated February 28, 2023. The five-year lease term began

on March 1, 2023. The Lease provides that Tenant takes the space "AS IS" and is responsible for all maintenance and repairs. Beyond the "Base Monthly Rent," Tenant is required to pay for utilities, water and sewer services, and real estate taxes, all of which the Lease defines as "Additional Rent." The Lease provides for late fees that are likewise defined as "Additional Rent."

The Lease also requires Tenant to reimburse Landlord, as "Additional Rent," for "all out of pocket expenses associated with Tenant's default under this Lease including[]" attorneys' fees.

Section 3.5 of the Lease waives the right to redeem, providing that:

> [i]f Tenant should fail to pay any Basic Rent or additional rent when due, and Landlord initiates any court action against Tenant because of its failure to pay Basic Rent or additional rent, Tenant hereby waives its right to redeem the Premises from any summary ejectment or unlawful detainer proceeding against Tenant in any court.

1

On August 5, 2024, Landlord filed a complaint under RP § 8-401 in the District Court sitting in Frederick County. Landlord claimed that Tenant owed a total of $70,439.55, consisting of Base Monthly Rent for the months of June 2023 through August 2024, unspecified Additional Rent, and $8,100 in Base Monthly Rent coming due after the complaint was filed but before trial. The complaint noted that "Tenant waived the right to redeem the premises under paragraph 3.5 of the commercial lease." The complaint requested judgment for possession, but not a monetary judgment.

At trial, Landlord acknowledged that Tenant was current on its Base Monthly Rent but alleged that Additional Rent—consisting of unpaid water and sewer bills, real estate taxes, late fees, attorneys' fees, and $7,000 for replacement of the HVAC system—was

5

due and unpaid. Landlord explained that the amount of rent claimed in its complaint—$70,439.55—initially included costs for replacing the roof, but that Landlord had subsequently decided to withdraw that component from its claim.

Tenant acknowledged its failure to pay two utility bills and the most recent real estate tax bill, although it defended its failure to pay the latter because "they're not due yet to the City." Tenant disputed that it was responsible under the Lease for the HVAC replacement costs. Tenant also disputed the charges for attorneys' fees, claiming that it first learned of Landlord's claim for attorneys' fees when Landlord introduced an affidavit at trial. Similarly, Tenant disputed the late fees, claiming that it was unaware of such charges until Landlord produced its account ledger at trial.

The District Court found that Tenant was not responsible for the $7,000 replacement cost for the HVAC system but determined that Additional Rent in the amount of $16,240.30 was due and unpaid. The $16,240.30 consisted of unpaid utility bills ($266.43), real estate taxes ($5,161.83), and attorneys' fees ($6,590.71), along with associated late fees ($4,221.33).

Relying on the Lease's waiver provision, the District Court entered judgment in favor of Landlord for possession of the Premises with no right of redemption. Tenant requested but was denied the opportunity to pay the amounts owed to avoid entry of judgment.[1]

---

[1] Before the District Court adjourned to deliberate, Tenant's counsel twice stated that Tenant was prepared to pay the two water bills and the unpaid tax bill. After the District Court delivered its ruling but before entering a judgment for possession, Tenant's counsel said: "[A]s I noted before, my client was -- has a check here today. Was that something that we can, you know, pay those things and not have a judgment -- . . . -- because he was prepared to pay them . . . today anyway." The court denied the request, stating that Tenant

6

Tenant took an on-the-record appeal to the Circuit Court for Frederick County, where it advanced two arguments. *First*, Tenant argued that the District Court erred by including in its tally of unpaid rent all of the attorneys' fees Landlord had requested, including those incurred in connection with issues unrelated to Tenant's alleged default and the HVAC issue on which Tenant prevailed.

*Second*, Tenant argued that the Lease's waiver of the statutory right of redemption violated Maryland's public policy and was therefore invalid. Tenant contended that Title 8 of the Real Property Article differentiates between residential and nonresidential tenancies, including in multiple places within section 8-401. Notwithstanding those distinctions, Tenant reasoned, the General Assembly intentionally made the statutory redemption right apply equally to residential and nonresidential tenancies. Thus, Tenant concluded, the contractual waiver of the statutory redemption right is unenforceable as against public policy.

The circuit court vacated the District Court's judgment and remanded the case for further proceedings. On the attorneys' fees question, the circuit court concluded that the District Court erred in finding that all of Landlord's requested fees were "owed at the time of trial." The circuit court concluded that some of the fees claimed by Landlord, including fees associated with the HVAC dispute on which Tenant had prevailed, did not arise out of a "default," as required under the applicable Lease provision. The circuit court ordered a remand to the District Court to recalculate the attorneys' fees.

---

"hadn't 'paid' it yet and I'm just not sure if he could have paid it beforehand, but it still wouldn't have erased -- unless he was prepared to pay everything, it still wouldn't have erased everything, so."

On the second question, the circuit court concluded that the Lease's waiver of the right of redemption was not enforceable on the "specifics of this case." The court first determined that Landlord failed to give Tenant notice of the complaint as required under subsection 8-401(c). Then, quoting our precedent, the circuit court recognized that summary ejectment is intended to be a quick and simple proceeding and is "unlike any other litigation procedure in Maryland" due to a combination of factors, including "its speed" and "the lack of opportunity for pretrial discovery[.]" The court also recognized that nonresidential tenancies are more likely to involve sophisticated parties than residential tenancies, and thus nonresidential parties are assumed to have accurately captured their bargain in the lease. But having just found that Landlord failed to comply with the notice provision of subsection (c), "the Court [could not] reconcile the Waiver provision in the Lease as it would apply here with the legislative intent of a summary ejectment proceeding[.]"

The circuit court was troubled that, if a landlord fails to give notice of the charges and the lease waives the right of redemption, the tenant faces two unpalatable choices: (1) pay the disputed charges and thus forfeit the right to have the court resolve the dispute; or (2) contest the disputed charge in court, but risk losing possession of the property for failure to pay previously unknown charges. Something had to give, and so the circuit court found that, on these facts, the waiver clause was not enforceable.

Landlord petitioned for a writ of certiorari, presenting two questions, and Tenant filed a cross-petition with three questions.[2] We granted both petitions. *Kapneck 14-16, LLC*

---

[2] Landlord proposed:

8

*v. Bkeezy's Speakeasy, LLC*, 492 Md. 411 (2025). We consolidated the proposed issues into two questions: (1) whether a commercial tenant has a right to advance notice under RP § 8-401(c)(1) before a landlord files a summary ejectment action; and (2) whether a commercial tenant's waiver of the right of redemption in a lease is enforceable where the landlord seeks to reclaim possession under RP § 8-401. We address these questions in reverse order.

---

1. Despite [Landlord's] right to exercise self-help and [Tenant's] waiver of any right to redeem the commercial property in the event of default under the parties' commercial lease, did the Circuit Court err in ruling that since [Landlord] chose to proceed with judicial eviction under Real Property Article § 8-401, [Landlord] is constrained by the "statutory limitations" of Real Property Article § 8-401(g)(1) and (3), which provides a tenant the right to redeem the leased premises by paying the amount of the judgment for possession unless a tenant has had three prior judgments of possession in the 12 months, which forecloses the right to redeem[?]

2. Did the Circuit Court err in ruling that [Landlord] was required to provide notice to [Tenant], a commercial tenant, pursuant to Real Property Article § 8-401(c)(1), which provides: "Before a landlord may file a complaint under this section, the landlord shall provide to the tenant a written notice of the landlord's intent to file a claim in the District Court against the tenant to recover possession of the *residential premises* if the tenant does not cure within 10 days after the written notice is provided to the tenant."[?]

Tenant proposed:

1. Are statutory rights afforded to commercial tenants in Md. Code Real Property § 8-401 waivable by agreement or are such agreements, by nature, against public policy and unenforceable?

2. Does a commercial tenant have a right to notice of the charges and amounts of said charges a landlord is seeking in a summary ejectment action, pursuant to Md. Code Real Property § 8-401, filed against said commercial tenant?

3. Does a commercial tenant have due process rights afforded to them in statute and common law that cannot be waived by agreement?

II

A

We review legal conclusions, including the application of Maryland statutory and case law, without deference. *Velicky*, 476 Md. at 545-46 (citation omitted).

B

We first address the enforceability of the Lease provision waiving the statutory right of redemption under RP § 8-401(h)(1). Landlord argues that under RP § 1-104, parties may waive the statutory right of redemption in the absence of a specific statutory provision prohibiting the same. Landlord also argues that, although discouraged by this Court's precedent, a landlord has the common law right to resort to self-help to regain possession of its premises if the lease so permits. *See K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 167-68 (1989). Thus, Landlord concludes, it would make no sense to invalidate the Lease's waiver provision because doing so would incentivize landlords to engage in the discouraged self-help remedy instead of invoking the orderly process under RP § 8-401. Further, in Landlord's view, enforcing the waiver provision would not contravene this Court's recent decision in *Copinol Restaurant, Inc. v. 26 North Market LLC*, 491 Md. 246 (2025), where we rejected a landlord's attempt to use a tenant holding over action when the landlord terminated the lease before its expiration.

Tenant, on the other hand, argues that the waiver clause is unenforceable for the same reason it advanced in the circuit court: the waiver clause violates Maryland's public policy. Tenant asserts that if enforced, the waiver of the right of redemption would effectively eliminate a tenant's opportunity to dispute any charge imposed by a landlord because the consequence of losing that dispute at trial would be forfeiture of the property.

10

Tenant also argues that in light of the lack of prior notice of all fees and charges claimed by Landlord, enforcing the waiver clause would violate its due process rights. At oral argument, Tenant contended that *Copinol* supports the circuit court's conclusion that the waiver clause is unenforceable.

1

The waiver clause is found in section 3.5 of the Lease:

> If Tenant should fail to pay any Basic Rent or additional rent when due, and Landlord initiates any court action against Tenant because of its failure to pay Basic Rent or additional rent, Tenant hereby waives its right to redeem the Premises from any summary ejectment or unlawful detainer proceeding against Tenant in any court.

The right of redemption is found in RP § 8-401(h)(1):

> Subject to paragraph (3) of this subsection, in any action of summary ejectment for failure to pay rent where the landlord is awarded a judgment giving the landlord restitution of the leased premises, the tenant shall have the right to redemption of the leased premises by tendering in cash, certified check, or money order to the landlord or the landlord's agent all past due amounts, as determined by the court under subsection (e) of this section, plus all court awarded costs and fees, at any time before actual execution of the eviction order.

The parties do not dispute that the waiver clause in section 3.5 of the Lease applies to the post-judgment right of redemption under RP § 8-401(h)(1); indeed, both parties litigated this case from its inception on that premise.[3]

---

[3] Our concurring and dissenting colleagues disagree and would hold that section 3.5 of the Lease does *not* apply to the right of redemption under RP § 8-401(h)(1). As neither party raised this issue, we will not dwell long on it. Their novel interpretation rests on a misplaced focus on the word "proceeding" and a narrow understanding of its meaning. Applying the objective theory of contract interpretation, we have no difficulty concluding that—as both parties evidently understood—the phrase "right to redeem" in the Lease's waiver clause refers to the "right of redemption" in RP § 4-801(h).

11

The issue in dispute is whether the contractual waiver of the right of redemption is, as the circuit court held, unenforceable as against Maryland's public policy.[4] We begin with section 1-104 of the Real Property Article:

> Any person may vary, by agreement, the effect of any provision in this article, except (1) as provided in this article, (2) the agreement may not affect the rights of persons not parties to or otherwise bound by the agreement, and (3) as provided by § 1-103 of this title.

That section applies here. The "effect" of the right of redemption in RP 8-401(h)(1) is that a tenant has the right after entry of judgment to stop an eviction by paying the amounts owed. The effect of the Lease's waiver clause is that Tenant does *not* have that right. Thus, the waiver clause varied the effect of the statute as permitted by section 1-104.

Tenant is correct, of course, that Maryland law distinguishes between residential and nonresidential tenancies and that the statutory right of redemption applies to both. But the conclusion that Tenant would have us draw—that a waiver of the right of redemption violates Maryland's public policy—does not follow. Throughout Title 8, the General Assembly afforded residential tenants protections that it did not extend to nonresidential tenants. Indeed, this opinion earlier discussed the distinctions within section 8-401 itself. But the differences do not end there.

Consider RP § 8-208. That statute, which applies only to residential leases, prohibits a landlord from including in a lease any provision by which the tenant "agree[s] to waive

---

[4] The concurring and dissenting opinion of Justice Watts asserts that our analysis and answer to this question is dicta. That argument rests on speculation that, on remand, Tenant will exercise its right under RP § 8-401(e)(5) to satisfy the complaint and prevent entry of judgment for possession. We decline to engage in such speculation. The question was preserved, raised, briefed, and argued. Indeed, both parties petitioned this Court to answer it. Our answer is not dicta.

or to forego any right or remedy provided by applicable law[,]" which would include a waiver of the statutory right of redemption. RP § 8-208(d)(2). It also prohibits any lease provision that "authorize[s] any person to confess judgment on a claim arising out of the lease[,]" RP § 8-208(d)(3), or that "[a]uthorizes the landlord to take possession of the leased premises, or the tenant's personal property unless the lease has been terminated by action of the parties or by operation of law," RP § 8-208(d)(6). No such prohibitions apply to nonresidential leases. Similarly, although subsection 8-208(d)(4) bars landlords from including jury trial waivers in residential leases, a jury trial waiver in a commercial lease is enforceable. *See Westbard Apartments, LLC v. Westwood Joint Venture, LLC*, 181 Md. App. 37, 50 (2007). This reflects the General Assembly's policy judgment, consistent with this Court's precedent, that nonresidential lease provisions are more likely to result from arm's-length negotiations than are residential leases. *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 419 (2016) (citing *Univ. Plaza Shopping Ctr., Inc. v. Garcia*, 279 Md. 61, 67 (1977)).

Against that backdrop, the absence of any provision applicable to nonresidential tenancies protecting the right of redemption from the operation of RP § 1-104 is dispositive. The Real Property Article has multiple provisions that prevent the General Assembly's policy judgment from being altered by contract. *See, e.g.*, RP §§ 8-105 (invalidating provisions that limit a landlord's liability as to common areas); 8-207(d) (providing that the duty to mitigate damages cannot be waived); 11-111.2(b)(1) (under Maryland's Condominium Act, prohibiting any provision that restricts the display of signs in support of a political candidate); 11-111.4(b)(2) (under Maryland's Condominium Act, voiding any provision that "unreasonably restricts the installation or use of electric vehicle recharging

equipment in a unit owner's [] parking space"). Here, because the General Assembly did not insulate RP § 8-401(h)(1)'s right of redemption from the operation of RP § 1-104 in nonresidential leases, we must defer to that policy judgment. *See Blackstone v. Sharma*, 461 Md. 87, 113 (2018). And because neither of the remaining two exceptions to section 1-104 applies, we hold that section 1-104 authorizes the waiver of the right of redemption clause in section 3.5 of the Lease.[5]

---

[5] The legislative history of section 1-104 reinforces this understanding. The comment to that section's predecessor emphasizes "the principle of freedom of contract[,]" subject only to the limitation that "[p]rivate parties cannot . . . enter into a contract which violates public policy." MD. CODE ANN., ART. 21 § 1-105 (1957; 1973 Repl. Vol.), COMMENT TO TITLE I.

We further observe that section 1-104 uses similar language to that found in section 1-302(a) of the Maryland Uniform Commercial Code, which provides that "the effect of provisions of the Maryland Uniform Commercial Code may be varied by agreement." MD. CODE ANN., COM. LAW § 1-302(a) (2013 Repl. Vol.). This language comes from the Model Uniform Commercial Code ("UCC"), which provides: "The effect of provisions of this Act may be varied by agreement." UCC § 1-102(3) (A.L.I. & Unif. L. Comm'n 1972). Referring to that section of the Model Code, this Court observed that the UCC provisions governing a bank's ability to revoke settlement, charge-back a customer's account, and obtain a refund from a customer were "not necessarily binding" because "freedom of contract is the rule rather than the exception[,]" *Lema v. Bank of America, N.A.*, 375 Md. 625, 635 (2003) (citation omitted), and "the effect of . . . provisions may be altered by agreement[,]" *id.*

In *Etelson v. Suburban Trust Co.*, we held that the UCC recognizes that "there may be times where parties to an instrument may choose to alter the general provisions of the UCC to meet their particular purposes" and that the parties had "limited the protection to which they might have otherwise been entitled under the UCC" by the terms of their agreement. 263 Md. 376, 379-80 (1971).

And in *Pines Plaza Ltd. Partnership v. Berkley Trace, LLC*, we described the UCC provisions as "default rule[s] of contract interpretation" that could be overridden by "a clear expression of contrary intent by the parties[,]" and clarified that when a default term in the UCC conflicts with the intent of the parties to otherwise contract, the term agreed upon by the parties will control. 431 Md. 652, 669 (2013).

These interpretations of similar language used in the UCC support our conclusion that RP § 1-104 applies here and protects the waiver provision in the Lease from Tenant's challenge on public policy grounds.

Holding that the contractual waiver of the statutory right of redemption does not violate Maryland's public policy is not inconsistent with our decision in *Copinol*. That case involved the tenant holding over statute, which applies only where the "tenancy is fully ended and *expired*[,]" RP § 8-402(b)(2)(i) (emphasis added), and confers jurisdiction on the District Court to award possession only when the landlord can prove "four requisite elements—prior possession, a lease that has expired, proper notice to quit, and the tenant's refusal to vacate[,]" *Copinol*, 491 Md. at 277. In *Copinol*, the landlord terminated a commercial lease for the tenant's failure to pay rent and then filed a tenant holding over action under RP § 8-402. *Id.* at 256. The landlord argued that the lease had "expired" when it terminated the lease for the tenant's breach—in effect, the landlord contended that the parties could contractually redefine "expired" to mean "terminated." *Id.* at 267.

We rejected that argument, reasoning that the words "terminate" and "expire" are not synonymous and that the landlord could not "contractually modify the statutory meaning of the phrase 'expiration of a lease' in RP § 8-402, thereby enabling a landlord to avail itself of remedies available under the tenant holding over statute in a manner inconsistent with its plain language." *Id.* at 257. In other words, we prohibited the landlord in *Copinol* from attempting to use a judicial remedy—the tenant holding over action—when the statutory prerequisites for that remedy did not exist.

This case presents a different issue. Here, Landlord was not attempting to modify the statutory elements of a summary ejectment action or to utilize a judicial remedy where the statutory prerequisites were not satisfied. To the contrary, Landlord sought repossession through a summary ejectment action under section 8-401 for an alleged failure to pay

rent—precisely the remedy the General Assembly created for this situation. A waiver of the right of redemption does not modify the elements of the summary ejectment action or enable Landlord to proceed where it otherwise could not; it simply alters the post-judgment consequences for Tenant.

Thus, unlike in *Copinol*, the question here is whether Tenant may waive a statutory *protection*—the right of redemption—within the framework of the summary ejectment action. That is a question of freedom of contract governed by RP § 1-104, not a question of whether Landlord may proceed under section 8-401 in the first place.

## C

We now turn to the notice issue. The parties agree that the circuit court erred in concluding that Landlord violated the notice requirement of RP § 8-401(c)(1). That provision requires a landlord to provide written notice of its intent to file a complaint "to recover possession of the *residential premises*[.]" RP § 8-401(c)(1) (emphasis added). The landlord is required to use the form prepared by the Maryland Judiciary, *see* Appendix, which includes the amount of past due rent and late fees and a warning that a complaint for possession will be filed if that amount is not paid within ten days. By its plain terms, subsection 8-401(c)(1) applies only to residential leases, not to commercial leases like the one at issue here. Thus, we agree with the parties that the circuit court erred in holding that Landlord violated that subsection.

But that does not end the analysis. The circuit court's conclusion that Landlord violated subsection (c) was not a stand-alone basis for vacating the District Court's judgment but was merely the hook that anchored its concern about Tenant's lack of notice of all Additional Rent charges, which in turn provided the foundation for its holding that

16

the waiver clause was unenforceable. Although the circuit court's ruling on the waiver clause was legally incorrect, the extent to which Tenant received adequate pre-suit notice remains an important issue, and, not surprisingly, one on which the parties disagree.

Landlord contends that Tenant had appropriate pre-suit notice of all charges. In support, it cites the Lease provisions detailing Tenant's responsibility for water and sewer service, real estate taxes, maintenance and repairs, late fees, returned check fees, and attorneys' fees, as well as various invoices and requests for payment of the same. In essence, Landlord's position is twofold: (1) the Lease provides all the notice Tenant needs; and (2) in any case, Landlord expressly provided pre-suit notice of most charges.

Tenant, relying primarily on Landlord's complaint, contends that subsection 8-401(b)(3) requires Landlord to "specify the amount of rent due for each rental period under the lease, the day that the rent is due for each rental period, and any late fees for overdue rent payments." Tenant notes that Landlord left blank the space for inserting the amount of late fees owed and that "[n]owhere in the Complaint does [Landlord] note what additional rent is due, what charges constitute the additional rent, what late fees are due for late payment of rent, or what portion of the amount due is base rent versus additional rent." Tenant emphasizes that at trial, it denied receiving prior notice "of many of the fees and charges [Landlord] was claiming were due as the ledger, provided by [Landlord] at trial, was being seen by [Tenant] for the first time." Being subjected to a judgment for possession without the right of redemption under such circumstances, Tenant argues, constitutes a violation of its due process rights.[6]

---

[6] Because we resolve this issue on nonconstitutional grounds, we do not reach Tenant's constitutional argument. *See, e.g.*, *VNA Hospice of Md. v. Dep't of Health &*

Notwithstanding our conclusion that the circuit court erred in holding that subsection 8-401(c) requires notice in nonresidential tenancies, we conclude that, based on our precedent, the plain language of RP § 8-401, and the relevant provisions of the Lease, Tenant was entitled to pre-suit notice of all Additional Rent charges that formed the basis for Landlord's summary ejectment action. Thus, a remand to recalculate the amount of due and unpaid Additional Rent is necessary.

1

Rent refers to "payment for [a] tenant's use, possession and enjoyment of the land." *Garcia*, 279 Md. at 66. The most familiar form of rent is that of the fixed, periodic (typically, monthly) payment, the amount and due date for which are spelled out in a lease. Thus, unless the lease provides otherwise, no separate notice or demand from a landlord is necessary to trigger a tenant's obligation to pay that form of rent.

But some lease agreements impose additional payment obligations on tenants and characterize those obligations as "additional rent." A landlord's rationale for defining such obligations as additional rent is straightforward: Because *additional* rent is still *rent*, a nonresidential tenant's payment obligation—if properly classified as rent—can be enforced in a summary ejectment proceeding under RP § 8-401. *Westminster Mgmt.*, 486 Md. at 638. In contrast, if a tenant's obligation does not qualify as rent, it may still be enforceable, just not in a summary ejectment proceeding.[7] *Id.*

---

*Mental Hygiene*, 406 Md. 584, 604 (2008) ("[T]he Court's strong and established policy is to decide constitutional issues only when necessary." (citation modified)).

[7] Although stated above, it's worth emphasizing that in *Westminster*, we held that in the residential context, the word "rent," as used in RP § 8-401, refers only to the "fixed, periodic payments a tenant is obligated to pay for use or occupancy of the leased premises."

18

In *University Plaza Shopping Center, Inc. v. Garcia*, we applied the common law definition of rent to determine whether the tenant's failure to reimburse the landlord for tenant improvements could support a summary ejectment action under section 8-401. 279 Md. at 63-64. We observed that a charge can constitute rent, and thus support a section 8-401 action, if: (1) it may be "definitely ascertained"; (2) it goes to the tenant's "use, possession and enjoyment" of the property; and (3) the parties intended the charge to be a form of rent. *Id.* at 67.

The first and third requirements—that the charges be "definitely ascertain[able]" and intended by the parties to constitute rent—imply a pre-suit notice entitlement.[8] A charge is not definitely ascertainable within the meaning of *Garcia* unless a tenant can readily determine its obligations from the lease terms and information available to it, including, if applicable, information from the landlord. Thus, the notion that an unpaid charge cannot support a summary ejectment action unless a tenant has pre-suit knowledge of its nature, amount, and due date inheres in the common law meaning of rent.

Pre-suit notice is also baked into RP § 8-401, which emphasizes that the summary ejectment process applies only to rent that is both due and unpaid. For example:

- Subsection (a) provides that a landlord may "have again and repossess the premises" "[w]henever the tenant or tenants fail to pay the rent when due and payable[.]"

- Subsection (b)(2)(iii) requires a landlord to "[s]tat[e] the amount of rent and any late fees due and unpaid[]" in the complaint.

486 Md. at 625. The discussion about additional rent that follows, therefore, does not apply to residential leases.

[8] Here, Tenant did *not* contend that the charges comprising Additional Rent—including attorneys' fees and late fees—failed to satisfy the second requirement, that is, Tenant did not argue the charges were *not* in exchange for Tenant's use, possession, and enjoyment of the property. We therefore express no opinion on that issue.

19

- If trial is held within the time prescribed by subsection (b)(4), subsection (e)(2)(ii) requires the court to determine the amount of "rent and late fees due as of the date of the complaint was filed[.]"

- But if trial is not held within the time specified by subsection (b)(4), then under subsection (e)(2)(iii), the court must "determine the rent and late fees due as of the trial date[,]" if so requested in the complaint.

Thus, under section 8-401, a landlord cannot base a summary ejectment action on an unpaid charge unless that payment is, in fact, *due*. And for a charge to be due and constitute rent, the tenant must be aware of it.

The first place to look to determine how and when a tenant is to be made aware of a charge is, of course, the lease. To be sure, the nature, amount, and due dates of some charges may be stated in the lease such that no additional information would be required for a tenant to determine its obligations. But other payment obligations may require information from other sources. With that in mind, we turn to the relevant provisions in the Lease.

2

The principles that guide our interpretation of leases are the same as for other types of contracts. *Copinol*, 491 Md. at 297. Maryland courts follow the "objective theory of contract interpretation." *Lyles v. Santander Consumer USA Inc.*, 492 Md. 670, 682 (2025) (quoting *Adventist Healthcare, Inc. v. Behram*, 488 Md. 410, 432 (2024)). We look to the plain language of the contract, read it in context with the contract's character and purpose, and apply common sense to avoid absurd results. *See id.* at 682-83 (citation omitted). If the contract language is unambiguous, we enforce the contract as plainly written. *Id.* at 682 (citation omitted). If reasonable minds could ascribe more than one meaning to the contract language, however, the contract is ambiguous, in which case the court may consider

extrinsic evidence. *Id.* at 683 (citation omitted). "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law reviewed without deference." *Adventist Healthcare*, 488 Md. at 432 (citing *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7 (2014)).

Applying those principles here, we consider Tenant's right to notice of the charges comprising the $16,240.30 of Additional Rent that the District Court found to be due and unpaid: water and sewer charges of $266.43, real estate taxes of $5,161.83, late fees of $4,221.33, and attorneys' fees of $6,590.71.

a

The charges for water and sewer service and real estate taxes are governed by sections 2.3 and 2.4 of the Lease, respectively, which require Tenant to pay such charges "within five (5) days upon receipt" of the bills. Tenant's contractual entitlement to notice is, therefore, clear: Landlord must give Tenant copies of the bills, and then Tenant has five days to pay. Applying these Lease provisions to RP § 8-401, such charges cannot be considered "due and unpaid" until, at the earliest, the sixth day after Tenant receives the bill.

b

Turning now to Landlord's claim for attorneys' fees, section 3.5 of the Lease provides:

> Tenant expressly agrees to reimburse Landlord as additional rent for all out of pocket expenses associated with Tenant's default under this Lease including, but not limited to, court costs, attorneys' fees, collection agencies, brokerage fees, costs for reletting the Premises, collection of rent and securing of possession of the Premises.

21

By its terms, this clause requires *reimbursement* of *out-of-pocket expenses*. By framing Tenant's obligation as reimbursement, the Lease necessarily requires Landlord to disclose to Tenant the nature and amount of the *out-of-pocket* expenses and request reimbursement. The Lease does not demand clairvoyance on Tenant's part.

Moreover, if Landlord provides such notice and requests reimbursement, Tenant is not required to pay Landlord immediately because section 3.5 imposes no due date for reimbursement. We must therefore turn to section 1.4 of the Lease to ascertain the payment deadline: "Unless otherwise expressly specified herein, Additional Rent shall be paid by Tenant with the installment of Monthly Rent thereafter fall due." Thus, if Landlord provides the requisite notice and makes a demand for payment, Tenant must make payment on or before the *next* monthly rent payment date—the first of the following month—not immediately upon Landlord's demand. Applying this provision to section 8-401, attorneys' fees cannot be considered due and unpaid until the second day of the month *after* Landlord provides notice and demands reimbursement.

c

We turn now to the late fees. This component of the amount the District Court found due and unpaid consisted of the following charges, as reflected in the following verbatim entries on Landlord's ledger:

| Date of Entry | Amount | Description |
|---|---|---|
| 9/8/23 | 390 + 60 = 450 | Late Fees - September Rent (Due 9/5 - 10% + $20 per day) |
| 11/7/23 | 390 + 40 = 430 | Late Fees - November Rent (Due 11/5 - 10% + $20 per day) |
| 11/22/23 | 100.27 + 20 = 120.27 | Late Fees - Water & Sewer Bill (Due 11/16 - 10% + $20 per day) |
| 12/6/23 | 190 + 20 = 210 | Late Fees - December Rent (Due 12/5 - 10% + $20 per day) |

| | | |
|---|---|---|
| 1/8/24 | 15 + 60 = 75 | Late Fees - January Rent (Due 1/5 - 10% + $20 per day) |
| 3/1/24 | 15.98 + 120 = 135.98 | Late Fees - Water & Sewer Bill (Due 2/19 - 10% + $20 per day) |
| 8/22/24 | 11.67 + 1,780 = 1,791.67 | Late Fees - Water & Sewer Bill (Due 5/20 - 10% + $20 per day as of 8/22) |
| 8/22/24 | 516.18 + 460 = 976.18 | Late Fees - Real Estate Taxes (Due 7/25 - 10% + $20 per day as of 8/22) |
| 8/22/24 | 12.23 + 20 = 32.23 | Late Fees - Water & Sewer Bill (Due 8/16 - 10% + $20 per day as of 8/22) |

To support its contention that Tenant had adequate notice of all such charges, Landlord relies, in part, on section 1.3 of the Lease:

Tenant agrees to pay to Landlord, as additional rent, a late fee equal to the sum of Ten Percent (10%) of any monthly rent installment and other charges, which late charge shall increase by Twenty Dollars ($20) per day for each day that the full amount is not paid to Landlord within Five (5) days of the date on which said monthly installment of rent and other charges are due and payable.

Because section 1.3 does not specify when late fees are due, we again turn to the general rule in section 1.4, which provides that late fees are due with the next monthly rent payment. Landlord presumably views these provisions as sufficient to provide notice of all late fee charges on the theory that Tenant can calculate the late fee under section 1.3 and determine when it's due under section 1.4 just as easily as Landlord can. But it's not that simple.

The language of section 1.3 is not free from ambiguity. In contrast to other provisions imposing payment obligations using the word "shall" (such as the water and sewer provision in section 2.3 and the real estate taxes provision in section 2.4), section 1.3 uses the phrase "Tenant *agrees* to pay"—language that could mean that the obligation is not automatic, but rather is triggered only if Landlord makes a proper demand.

23

Landlord's ledger, admitted at trial and excerpted above, supports this interpretation. Landlord introduced the ledger in its case-in-chief as a business record with testimony from its representative that the ledger reflects the "record made when charges accrue and payments are made[,]" it is "the practice of [Landlord] to keep such records[,]" and that such records are "kept in the ordinary course of business[.]" These are key elements of the business records exception to the hearsay rule, codified at Maryland Rule 5-803(b)(6). Although in practice witnesses often establish these elements with rote testimony, these elements carry significant, substantive weight because they provide the indicia of reliability necessary to except such records from the hearsay rule. We have explained:

> The rationale underlying the business records exception is that because the business relies on the accuracy of its records to conduct its daily operations, the court may accept those records as reliable and trustworthy. Moreover, the recorder, who has no motive to falsify or record inaccurately, is under a business duty to make an honest and truthful report that can be relied upon by the business.

*Dep't of Pub. Safety & Corr. Servs. v. Cole*, 342 Md. 12, 30-31 (1996) (citation modified). That's in contrast to records made for litigation purposes. *See State v. Bryant*, 361 Md. 420, 430 n.5 (2000).

Because Landlord was the prevailing party in the District Court, we fully credit Landlord's representative's testimony that charges were entered in the ledger as they accrued. *See City of Bowie v. Mie Props., Inc.*, 398 Md. 657, 676 (2007) ("We must consider the evidence in the light most favorable to the prevailing party." (citation modified)). Without such testimony, the ledger would have been vulnerable to a hearsay objection.

24

So, if the Lease provides Tenant with all the notice it needs of the late charges, then one would expect that a ledger that records such charges as they accrue would reflect such accrual in accordance with the applicable Lease provisions. But that did not happen here. The ledger indicates that late fees are subject to Landlord's discretion.

For example, the ledger shows that in 2023, real estate taxes were charged to Tenant on July 13. Under section 2.4 of the Lease, Tenant's payment was due on July 18, but payment was made on August 2. If late fees accrued automatically, the 10% late fee would have accrued on July 19 and become due on August 1, and the $20 per day late fee component would have started accruing on July 24. But the ledger shows no accrual of late fees at all.

The ledger's late fee entries for the 2024 real estate taxes likewise reflect Landlord's discretion. Landlord invoiced Tenant for real estate taxes on July 11, 2024. Under section 2.4, payment was due on or before July 16, and under section 1.3, a 10% late fee would accrue on July 17, and the $20 per day fee would have started accruing on July 22. But the ledger did not reflect the accrual of *any* late fees on the unpaid 2024 real estate taxes until the day before the District Court trial—August 22, 2024—when it included the 10% late fee and the $20 per day fee as of that date, beginning on July 25.

The same thing happened with the two unpaid water and sewer bills. Landlord sent one bill, in the amount of $116.67, to Tenant on May 5, 2024. Thus: (1) under section 2.3, Tenant had to pay it by May 10; (2) under section 1.3, the 10% late fee accrued on May 11, and the $20 per day fee began accruing on May 16. Again, the ledger reflects the accrual of no late fee until August 22, the day before trial, when Landlord made an entry for the 10% late fee plus $20 per day as of that date, beginning on May 20.

25

Landlord sent the second unpaid water and sewer bill, in the amount of $122.31, on August 1, 2024. Thus: (1) under section 2.3, Tenant had to pay it by August 6; and (2) under section 1.3, the 10% late fee accrued on August 7, and the $20 per day fee began accruing on August 12. But once again, no late fees were accrued on the ledger until the day before trial, when Landlord made an entry for the 10% late fee and the $20 per diem starting on August 16.

This evidence supports an interpretation that the late fee clause in section 1.3 is discretionary rather than automatic. Given the discretionary nature of the late fees Landlord charged, Tenant was entitled to both notice that Landlord chose to impose a late fee and the time provided under the Lease to pay it *before* Landlord could claim it as due and unpaid Additional Rent under RP § 8-401. A late fee charged without such notice fails to meet *Garcia*'s requirement that all rent charges be "definitely ascertained."[9] *See* 279 Md. at 67.

### III

In conclusion, we hold that, in a nonresidential lease, the waiver of the right of redemption in section 3.5 of the Lease does not violate Maryland's public policy. And because Tenant did not establish any other defense to enforcement of that clause, such as fraud, duress, unconscionability, or mistake, that waiver clause is enforceable here.

---

[9] As noted above, in addition to the Lease provisions, Landlord relied on certain invoices and requests for payment that were admitted into evidence to support its contention that, beyond the relevant Lease provisions, Landlord provided Tenant with separate notice of certain charges. We express no opinion on the sufficiency of that evidence. On remand, the facts will be for the District Court to determine on the existing record.

We also hold that a charge of additional rent is not "due" and "unpaid" under RP § 8-401 unless, when the complaint is filed, the tenant had: (1) prior notice of the nature and amount of the charge; and (2) the full amount of time provided under the lease for payment. Accordingly, we will remand this case for the District Court to recalculate the amount of due and unpaid Additional Rent at the time Landlord filed its complaint. On remand, for each charge comprising the $16,240.30 that the District Court previously determined to be due and unpaid, the District Court shall make factual findings based on the existing evidentiary record and include in its tally only those charges for which both conditions were satisfied.

In ordering a remand for this purpose, we are mindful that because the waiver of the right of redemption is enforceable here, a determination that even a dollar was due and unpaid would support a judgment for possession. Indeed, Landlord made that very point in the circuit court, arguing that it does not matter whether the amount of due and unpaid rent is $1 or the full amount that the District Court determined, because either way, Landlord is entitled to evict Tenant and regain possession of the Premises. So, it may seem that a remand to recalculate the due and unpaid rent is an unnecessary exercise. We think otherwise for three closely related reasons.

*First*, a judgment for possession can impose collateral consequences on a tenant beyond loss of the leasehold. *See, e.g.*, *Cane v. EZ Rentals*, 450 Md. 597, 612 (2016) (noting that, in the residential context, evictions impact credit and reduce housing access). Just as a judgment for possession can impact a residential tenant's credit score, the magnitude of a commercial tenant's default could affect its ability—or the ability of its principals—to conduct business in the future.

27

*Second*, even when the landlord seeks only possession, section 8-401 *requires* the District Court to determine the amount of due and unpaid rent; it is not enough for the District Court to find that *some* amount of rent—*any* amount—is due and unpaid. Thus, determining the precise amount of due and unpaid rent mattered to the General Assembly when it enacted the statute. We will not second guess that policy choice.

*Third*, as noted above, tenants have a prejudgment off-ramp in subsection (e)(5) that allows them to pay the amount of due and unpaid rent and late fees, as determined by the District Court, to prevent entry of judgment. A tenant is entitled to have that amount determined correctly so that it can decide whether to take that off-ramp. Tenant will have the opportunity to invoke this right when the District Court, on remand, determines the amount of due and unpaid rent and late fees in accordance with the principles discussed above. If Tenant declines to exercise that right, the District Court shall grant Landlord a judgment for possession without the right of redemption.[10]

> **JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE DISTRICT COURT AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SPLIT EQUALLY BY THE PARTIES.**

---

[10] The concurring and dissenting opinion of Justice Watts asserts that we are implicitly holding that the waiver of section 3.5 of the Lease does not apply to a tenant's right under RP § 8-401(e)(5). That is incorrect. That issue was not raised in the District Court or on appeal, so we express no opinion on it. Moreover, nothing in this opinion should be construed as depriving either Landlord or Tenant of the right to appeal from the judgment the District Court will enter on remand.

## APPENDIX

## NOTICE OF INTENT TO FILE A COMPLAINT FOR SUMMARY EJECTMENT (Failure to Pay Rent)

(Real Property Article S 8401(c))

FROM: _____
Landlord/Agent

Address _____

City, State, Zip _____ Telephone _____

E-mail Address _____

TO:

Tenant (1) _____ Tenant (2) _____

Tenant (3) _____ Tenant (4) _____

Address _____

City, State, Zip _____ Telephone _____

E-mail Address(es) _____

### THIS IS <u>NOT</u> A NOTICE OF EVICTION

An action for repossession of the property may be initiated if the total amount listed below is not paid within 10 days after the landlord provides this notice. You have a legal right to dispute the charges.

The past-due rent and late fee amounts claimed by the landlord to be due are:

$_____ rent for the ☐ months ☐ weeks _____ to _____

$_____ *late fees for the ☐ months ☐ weeks _____ to _____

*Due pursuant to the terms of your lease.

$_____ *TOTAL

*Does not include other charges related to utilities, services, other fees, fines, and court costs.

At your request, the landlord must promptly provide you an itemized accounting of debits and credits (rental ledger) showing how the landlord came up with the amount they claim you owe.

### LANDLORD/AGENT CONTACT INFORMATION
(if different from above)

Phone Number: _____ E-mail: _____

Address: _____

### DATE AND METHOD OF PROVIDING NOTICE

This notice is being provided to the tenant by the landlord on_____ by:

Date

☐ First-class mail – mail service certificate of mailing  ☐ Affixed to the door of the leased property

☐ Delivered electronically by:  ☐ E-mail message  ☐ Text message  ☐ Electronic tenant portal

**Note: Notice may be sent electronically only at the request of the tenant. If sent through a tenant portal, the portal must provide the landlord with proof of the transmission by which the landlord can verify the transmission.**

---

RESOURCES FOR TENANTS AND LANDLORDS

- Under the **Access to Counsel in Evictions Law**, all income qualified tenants will have access to an attorney. Call 211 for a referral or visit legalhelpmd.org for more information.

- Alternative Dispute Resolution (ADR) Office mdcourts.gov/district/adr/home

  o **Mediation** is a conversation between the landlord and the tenant that is facilitated by a mediator. Topics discussed in mediation may include: the amount of rent that is due and how and when it might be paid; a move out date and conditions of moving out; modifying, extending or terminating the lease; and/or, other topics important to the landlord and to the tenant. Mediation is available **before and after a failure to pay rent case is filed in the District Court of Maryland. To request mediation, visit** mdcourts.gov/district/adr/landlordtenant.

- **Rental assistance may be available to both Landlords and Tenants.** Visit mdcourts.gov/legalhelp/housing.

- **Speak with a lawyer for free at a Maryland Court Help Center**. Get legal advice, help with forms, and referrals to rental assistance programs. Visit mdcourts.gov/helpcenter or call 410-260-1392.

-

DC-cv-lls    102024)

Reset

29

Circuit Court for Frederick County
Case No. C-10-CV-24-000717

Argued: January 5, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 33

September Term, 2025

_____

KAPNECK 14-16, LLC

v.

BKEEZY'S SPEAKEASY, LLC

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Concurring and Dissenting Opinion by Watts,
J., which Eaves, J., joins.

_____

Filed: April 29, 2026

Respectfully, I concur and dissent. I concur with the Majority's conclusion as to question 1 that, under the plain language of Md. Code Ann., Real Prop. (1974, 2023 Repl. Vol.) ("RP") § 8-401, and the relevant provisions of the Agreement of Lease ("the Lease") entered into between Kapneck 14-16, LLC, Petitioner, the landlord, and Bkeezy's Speakeasy, LLC, Respondent, the tenant, Respondent "was entitled to pre-suit notice of all Additional Rent charges that formed the basis for Landlord's summary ejectment action[,]" and a remand of the case to recalculate the amount of due and unpaid Additional Rent is warranted. Maj. Slip Op. at 18.

I part ways with the Majority as to the resolution of question 2. I would hold that the language of Section 3.5 of the Lease does not constitute a waiver of the right to redemption under RP § 8-401 and that the Lease does not contain any provision or wording indicating that the tenant has waived the right to redeem the property after a judgment under RP § 8-401(h)(1). As such, I would hold that it is not necessary to address the issue of whether waiving a nonresidential tenant's statutory right of redemption violates Maryland's public policy and is, therefore, unenforceable. See Maj. Slip Op. at 1, 12-16. With respect to question 2, I agree with the circuit court's conclusion that Respondent has not waived the post-judgment right of redemption under RP § 8-401(h)(1), but for different reasons than those relied upon by the circuit court.

"The legal relationship between landlord and tenant is governed by the contract between the parties," McDaniel v. Baranowski, 419 Md. 560, 574, 19 A.3d 927, 935 (2011) (citations omitted), in this case, the Lease. "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law[,]" regardless of the

parties' subjective interpretation of the agreement.  Impac Mortg. Holdings, Inc. v. Timm, 474 Md. 495, 533, 255 A.3d 89, 111 (2021) (citation omitted).  Recently, in Lithko Contracting, LLC v. XL Ins. Am., Inc., 487 Md. 385, 401-03, 318 A.3d 1221, 1230-31 (2024), we set forth in detail principles of contract interpretation, stating:

> Maryland courts follow the objective theory of contract interpretation.  Under that approach, unless the language of the contract is ambiguous, we interpret it based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation.  Therefore, it is the written language embodying the terms of an agreement that will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract.
>
> . . .
>
> If, after conducting this plain language inquiry, the court finds that a reasonably prudent person could ascribe more than one reasonable meaning to it, the contract is ambiguous.  The determination of ambiguity is context-dependent, as contract language that is clear in one context may be ambiguous in another.  If a court finds ambiguity, it must consider any extrinsic evidence that sheds light on the intentions of the parties at the time of the execution of the contract.  To be considered, extrinsic evidence must be admissible and must demonstrate an intent made manifest, not a secret intent at the time of contract formation.

(Citation modified).

"[A]mbiguous language in a contract that is not clarified by extrinsic evidence or interpretative aids is construed against a party to the contract when that party drafted the language in question[.]"  Impac Mortg. Holdings, Inc., 474 Md. at 509, 255 A.3d at 97. Stated otherwise, "a contract will be most strongly construed against its drafter when a court finds the contractual terms at issue to be ambiguous."  Credible Behav. Health, Inc. v. Johnson, 466 Md. 380, 399, 220 A.3d 303, 314 (2019) (citation modified).  This "canon

- 2 -

of construction is based on elementary notions of fairness[,]" namely, "that the drafting party was responsible for including the particular language in the contract and presumably had the greater opportunity to clarify the language in its favor, if that was the parties' intent, or at least to protect its own interests from a lack of clarity." Impac Mortg. Holdings, Inc., 474 Md. at 509, 255 A.3d at 97 (citation omitted).

These principles apply equally to residential and non-residential tenants in the formation and interpretation of a lease agreement, and govern the interpretation of the relevant language of Section 3.5 of the Lease, titled "Default," which provides:

> If Tenant should fail to pay any Basic Rent or additional rent when due, and Landlord initiates any court action against Tenant because of its failure to pay Basic Rent or additional rent, Tenant hereby waives its right to redeem the Premises from any summary ejectment or unlawful detainer proceeding against Tenant in any court.

In a summary ejectment proceeding, RP § 8-401 provides both for a tenant's right to satisfy the amount due and unpaid under a complaint and for a tenant's right of redemption of a property—satisfying the complaint by tendering payment of the amount that the court determines to be due and unpaid either at trial or adjournment of trial, as set forth in RP § 8-401(e)(5), or, where a landlord has been awarded judgment giving the landlord restitution of the leased premises, redeeming the property by tendering payment of the amount determined by the court at any time after judgment and before actual execution of the eviction order, as set forth in RP § 8-401(h)(1). RP § 8-401(e)(5) provides: "However, if the tenant, or someone for the tenant, at the trial, or adjournment of the trial, tenders to the landlord the rent and late fees determined by the court to be due and unpaid, together with the costs of the suit, the complaint against the tenant shall be entered as being

satisfied."[1]  RP § 8-401(h)(1) provides:

> Subject to paragraph (3) of this subsection, in any action of summary ejectment for failure to pay rent where the landlord is awarded a judgment giving the landlord restitution of the leased premises, the tenant shall have the right to redemption of the leased premises by tendering in cash, certified check, or money order to the landlord or the landlord's agent all past due amounts, as determined by the court under subsection (e) of this section, plus all court awarded costs and fees, at any time before actual execution of the eviction order.

By its plain language, the third paragraph of Section 3.5 of the Lease, which is set forth above, states that the tenant waives the right to redeem the property from a summary ejectment proceeding or an unlawful detainer proceeding in court. Section 3.5 does not, by its plain language, purport to waive the right of redemption under RP § 8-401(h)(1) that permits the tenant to redeem the property post judgment and before execution of the eviction order, *i.e.*, after the conclusion of the summary ejectment proceeding and entry of judgment. Section 3.5 does not mention the tenant's statutory right to redemption set forth in RP § 8-401(h)(1) at all, or waiver of that right to redemption, which, under the plain language of the statute, is a right that is exercised after a judgment is awarded but before execution of the eviction order. The statutory right of redemption does not exist during a summary ejectment proceeding before judgment has been entered.

---

[1]RP § 8-401(e) sets forth procedures that a court must follow when the trial on a complaint for summary ejectment occurs on the fifth day after the filing of the complaint or later. If trial occurs on the fifth day after the complaint is filed and the court is satisfied that rent is due and owing, the court shall calculate the amount of rent and late fees due as of the date the complaint was filed. See RP § 8-401(b)(4), (e)(2)(ii). If trial does not occur on the fifth day after a complaint is filed, see RP § 8-401(b)(4)(i), and the tenant has not become current after the filing of the complaint, if the complaint so requests, the court "shall enter judgment in favor of the landlord for possession of the premises and determine the rent and late fees due as of the trial date[,]" RP § 8-401(e)(2)(iii).

Section 3.5 unambiguously states that the tenant cannot redeem the premises from any summary ejectment or unlawful detainer proceeding in any court. Waiving the ability to redeem a property from a proceeding means that once the proceeding has begun the property cannot be redeemed from or during the proceeding. The language of Section 3.5 does not aim to preclude a tenant from exercising the post-judgment right of redemption under RP § 8-401(h)(1) after a summary ejectment proceeding.

The waiver language in Section 3.5 applies to both a summary ejectment and unlawful detainer proceeding. An unlawful detainer proceeding is not a proceeding that is authorized by the summary ejectment statute. RP § 14-132 provides for an unlawful detainer action. RP § 14-132 provides that a "'wrongful detainer' means to hold possession of real property without the right of possession[,]" and sets forth a procedure for a landlord to regain possession by filing a complaint in District Court. RP § 14-132(b)(2) expressly provides that the section does not apply if a remedy is available under Title 8 of the Real Property article. Unlike RP § 8-401, RP § 14-132 does not provide for a right of redemption by the party in possession of the property after entry of judgment. And, the statutory right to redemption provided for under RP § 8-401(h)(1) does not apply to the redemption of a property from an unlawful detainer proceeding. Section 3.5's inclusion of language waiving the tenant's right to redeem the premises from both a summary ejectment and unlawful detainer proceeding demonstrates that its language does not pertain to a waiver of the post-judgment statutory right to redeem a property under RP § 8-401(h)(1), but rather to an unspecified right to redeem the property from both types of proceedings.

Section 3.5 states that the "[t]enant hereby waives its right to redeem the Premises

- 5 -

from any summary ejectment or unlawful detainer proceeding against Tenant in any court." Section 3.5 provides that the tenant waives "its right" to redeem the property, not that the tenant waives "any right" to redeem the property from or during either proceeding. Section 3.5's language does not purport to separately waive the tenant's statutory right to redeem property after judgment under RP § 8-401(h)(1)—a right that does not apply after entry of judgment in an unlawful detainer proceeding. Under Section 3.5 of the Lease, the tenant has agreed to waive its right to redeem property from a summary ejectment and an unlawful detainer proceeding, meaning that the tenant has waived a right to redeem that applies to both proceedings. "Where possible, courts should avoid interpreting contracts so as to nullify their express terms." Calomiris v. Woods, 353 Md. 425, 441, 727 A.2d 358, 366 (1999). Interpreting the language of Section 3.5 to "refer[] to" the waiver of the statutory right to redeem property after judgment under RP § 8-401(h)(1) would render the language of the provision meaningless with respect to an unlawful detainer proceeding. Maj. Slip Op. at 11 & n.3.[2]

---

[2]Maryland Rule 1-202, titled "Definitions," sets forth a definition of the word "proceeding," stating that "'[p]roceeding' means any part of an action." Md. Rule 1-202(x). In turn, Maryland Rule 1-202(a) provides that "'[a]ction' means collectively all the steps by which a party seeks to enforce any right in a court or all the steps of a criminal prosecution." These definitions demonstrate that the exercise of the right to redemption under RP § 8-401(h)(1) does not occur during a summary ejectment proceeding as a step in the action. Under RP § 8-401(h)(1), a party exercising the post-judgment right to redemption pays all past-due rent, costs, and fees, awarded in a judgment, directly to the landlord and need not seek permission or authorization of the court to exercise the right.

In addition to the definitions set forth in Maryland Rule 1-202, "when the contract language is plain and unambiguous, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Impac Mortg. Holdings, Inc., 474 Md. at 507, 255 A.3d at

Without referring to the waiver of the right to redemption as a waiver of the statutory right to redemption under RP § 8-401(h)(1), we granted the petition for writ of *certiorari* and cross-petition on the following rephrased question, as question 2: "Is a commercial tenant's waiver of the right of redemption in a lease enforceable where a landlord seeks to reclaim possession under RP § 8-401?" Kapneck 14-16, LLC v. Bkeezy's Speakeasy, LLC, 492 Md. 411, 344 A.3d 675 (2025). In a 9-page brief in this Court, Petitioner contended that the language of Section 3.5 was unambiguous, arguing:

> "Maryland courts construe a commercial lease like any contract and if the contractual language is unambiguous, the court must give effect to its plain, ordinary, and usual meaning." *Sy-Lene of Washington, Inc. v. Starwood Urb. Retail II, LLC*, 376 Md. 157, 167, 829 A.2d 540 (2003). Here, the language of Appellee's waiver of its right to redeem the Premises in any summary ejectment proceeding under paragraph 3.5 of the Lease is clear and unambiguous.

To be sure, on brief, Respondent did not respond to Petitioner's contention that the language of Section 3.5 of the Lease was sufficient to constitute a "waiver of its right to redeem the Premises in any summary ejectment proceeding." Nonetheless, the issue of whether the language of Section 3.5 is ambiguous is not a novel one; it is a point raised and argued by Petitioner in this Court. And, our case law instructs that "the initial step in the

---

96. It is not from the definition of the word "proceeding" that a court may discern the interpretation of Section 3.5; rather, it is what a reasonable person in the position of Petitioner and Respondent would have thought the term meant at the time the agreement was entered into. Employing the objective theory of contract interpretation, I doubt that a reasonable person in the position of the parties in this case would have thought that the language of Section 3.5 meant that the tenant had agreed to waive the statutory right to redeem property after entry of judgment in a summary ejectment proceeding under RP § 8-401(h)(1), without Section 3.5 having mentioned the right, and also believed that the language waived a different right to redeem property from an unlawful detainer proceeding, without the Lease having described or identified that right.

objective approach to contract interpretation is to determine whether the contract's meaning is plain and unambiguous." Impac Mortg. Holdings, Inc., 474 Md. at 507, 255 A.3d at 96. See also Credible Behav. Health, Inc., 466 Md. at 395, 220 A.3 at 311 ("[I]nterpretation of a contract commences with determining from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." (Citation modified)).

Applying the objective theory of contract interpretation and the rule that language of a contract must be interpreted based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation of the contract would result in the conclusion that Section 3.5 does not constitute a waiver of the right of redemption under RP § 8-401(h)(1). Without performing the required inquiry, however, the Majority states that, "[a]pplying the objective theory of contract interpretation, we have no difficulty concluding that—as both parties evidently understood—the phrase 'right to redeem' in the Lease's waiver clause refers to the 'right of redemption' in RP § 4-801(h)." Maj. Slip. Op. at 11 n.3. Absent the independent assessment required by the principles of contract interpretation, the Majority simply concludes that the language of Section 3.5 "refers to the 'right of redemption'" used in RP § 8-401(h)(1) and that "the parties evidently understood" this. Maj. Slip. Op. at 11 n.3. At the risk of stating the obvious, the Majority has failed to actually apply the objective theory of contract interpretation. Juxtaposed to this, the Majority implicitly concludes that the language of Section 3.5 indicating that the tenant waives the right to redeem the property from a summary ejectment proceeding does not waive the tenant's

- 8 -

right to satisfy the complaint under RP § 8-401(e)(5) and instructs that the case be remanded to the circuit court for the tenant to be given an opportunity to exercise the right. See Maj. Slip Op. at 28.

Given that the Majority has concluded that the language of Section 3.5 "refers to" a waiver of the statutory right to redemption under RP § 8-401(h)(1), Maj. Slip Op. at 11 n.3, the same conclusion could be reached with respect to RP § 8-401(e)(5)—the language of Section 3.5 "refers to" a waiver of the tenant's ability to satisfy the complaint under RP § 8-401(e)(5). This is so because both RP § 8-401(h)(1) and RP § 8-401(e)(5) contemplate an amount due having been determined by the court at the end of the proceeding—the only difference being that, under RP § 8-401(e)(5), a tenant can satisfy the amount at trial or the adjournment of trial, before entry of judgment, whereas, under RP § 8-401(h)(1), a tenant can redeem the premises by paying the judgment at any time after the judgment is entered and before the execution of the eviction order. Section 3.5's language stating that the tenant waives its right to redeem a property from a summary ejectment or unlawful detainer proceeding could obviously be said to "refer to" a waiver of the right to pay the amount a court determines to be due and owing during a summary ejectment or unlawful detainer proceeding.[3]

Because the Majority has concluded that the tenant had a right to notice of the charges comprising the $16,240.30 of additional rent and that the District Court erred under

---

[3]Because, in my view, the waiver language of Section 3.5 does not pertain to a waiver of any of the statutory rights provided in RP § 8-401, I do not take issue with the Majority's unspoken conclusion that the tenant has not waived the right to satisfy the complaint under RP § 8-401(e)(5).

RP § 8-401(e)(5) in refusing the tenant's offer at the end of the trial to pay the amount due and unpaid, the Majority need not have reached the issue of whether the tenant's purported waiver of the right of redemption under RP § 8-401(h)(1) violated Maryland's public policy.[4] See Maj. Slip Op. at 1, 15-16, 26. The Majority's holding that "the waiver of the right of redemption in section 3.5 of the Lease does not violate Maryland's public policy" is *dicta*. Maj. Slip Op. at 26. It is a holding that is of no consequence to the outcome of the case, *i.e.*, vacating the circuit court's judgment and remanding the case to District Court to recalculate the amount due and provide the tenant an opportunity to pay.[5]

In its brief in this Court, Respondent argued that the District Court erred by refusing to permit it to pay the amount due prior to adjournment of court pursuant to RP § 8-401(e)(5), contending:

> "[I]f the tenant, or someone for the tenant, at the trial, or adjournment of the trial, tenders to the landlord the rent and late fees determined by the court to be due and unpaid, together with the costs of the suit, the complaint against

---

[4]The Majority also need not have reached the issue of whether the parties are or are not precluded from varying the applicability or effect of RP § 8-401(h)(1) in the terms of an agreement by RP § 1-104, which provides:

> Any person may vary, by agreement, the effect of any provision in this article, except (1) as provided in this article, (2) the agreement may not affect the rights of persons not parties to or otherwise bound by the agreement, and (3) as provided by § 1-103 of this title.

The Majority did not need to reach this statutory provision because, under the objective theory of contract interpretation, Section 3.5 of the Lease did not mention, let alone purport to waive or vary, RP § 8-401(h)(1).

[5]As Justice Killough also explains, "[b]ecause Section 3.5, by its own terms, waives a right to 'redeem' the Premises from a *proceeding*—not from a *judgment*—it does not reach the post-judgment right of redemption under § 8-401(h)(1) and is thus without operative effect in this case." J. Killough Concurring and Dissenting Slip Op. at 2-3 (footnote omitted).

the tenant shall be entered as being satisfied." RP § 8-401(e)(5). Prior to the adjournment of the District Court trial, [Respondent] offered, through counsel, to pay all outstanding taxes, utility bills, and undisputed fees. The District Court refused to allow [Respondent] to pay the amounts due and have the judg[]ment marked as satisfied. The District Court erred by not allowing [Respondent] to pay the judg[]ment amount prior to the adjournment of court.

(First alteration in original). At oral argument in this Court, the tenant made clear that it wanted to pay the judgment at the conclusion of trial and that it is still prepared to do so. One of the reasons for the tenant's appeal to the circuit court and to this Court was to gain the opportunity to pay the amount of the judgment and retain possession of the premises. In ordering that the judgment of the District Court be vacated and remanding the case, the Majority correctly holds that "[RP §] 8-401 *requires* the District Court to determine the amount of due and unpaid rent[,]" and that RP § 8-401(e)(5) allows a tenant "to pay the amount of due and unpaid rent and late fees, as determined by the District Court, to prevent entry of judgment." Maj. Slip Op. at 28.

Yet, the Majority exceeds the parameters of the holdings in the case and expresses a view on an important issue in the area of summary ejectment proceedings, without acknowledging that the discussion is unnecessary *dicta*.[6] We granted *certiorari* with

---

[6]One potential explanation for the Majority expressing its view is that it speculates that on remand the tenant will not pay the amount due before entry of judgment. In fact, the Majority's contention that the view it expressed with respect to RP § 8-401(h)(1) is not *dicta* rests entirely on speculation that, despite obtaining the relief it sought, on remand, at some point in the future, the tenant will not pay pursuant to RP § 8-401(e)(5) an amount that may be due. See Maj. Slip Op. at 12 n. 4. The Majority has issued an advisory opinion about the potential applicability of RP § 8-401(h)(1) based on speculation that the tenant may not pay the amount due at some point in the future.

- 11 -

respect to the following two rephrased questions:

1. Does a commercial tenant have a right to advance notice as identified in Md. Code, Real Property ("RP") § 8-401(c)(1) before filing an action under RP § 8-401?

2. Is a commercial tenant's waiver of the right of redemption in a lease enforceable where a landlord seeks to reclaim possession under RP § 8-401?

In response to question one, the Majority holds that "a landlord may be awarded possession only for the failure to pay rent that is due and unpaid under the terms of the lease, and therefore, a summary ejectment action cannot be predicated on additional rent charges about which the tenant learns for the first time after the action is filed[,]" vacates the judgment of the circuit court, and remands the case for further proceedings consistent with its opinion. Maj. Slip Op. at 1-2. Before announcing its holding, addressing question 2 first, the Majority gratuitously expressed the view that a clause in a nonresidential lease waiving the statutory right of redemption under RP § 8-401(h)(1) does not violate Maryland's public policy. See Majority Slip Op at 1, 15-16. But, by holding that "a charge of additional rent is not 'due' and 'unpaid' under RP § 8-401 unless, when the complaint

---

In addition, the Majority orders that, if the tenant declines to exercise its right to pay the amount due, "the District Court shall grant Landlord a judgment for possession without the right of redemption." Maj. Slip Op. at 31. This ignores that the tenant has the right to appeal what it may view as an error or abuse discretion on the District Court's part, on remand, in calculating the amount of additional rent due, giving it the opportunity to invoke the right to pay the amount due, and entering judgment. More importantly, even though the Majority has expressed the view that an agreement waiving the right of redemption is not against public policy, the Majority has no authority to order a trial court to grant a future judgment for possession of property under RP § 8-401 without the statutory right to redemption.

- 12 -

is filed, the tenant had: (1) prior notice of the nature and amount of the charge; and (2) the full amount of time provided under the lease for payment[,]" and ordering that the case be remanded to the District Court to recalculate the amount of due and unpaid additional rent and holding that, under RP § 8-401(e)(5), Respondent must be given the opportunity to pay any amount due before the entry of judgment, the Majority decided the case on completely different grounds than the view it expressed concerning a waiver of the statutory right under RP § 8-401(h)(1). Maj. Slip Op. at 27, 30.

Clearly, any view that the Majority expressed about a potential waiver of RP § 8-401(h)(1) by a nonresidential tenant is *dicta*. Maj. Slip Op. at 12 n.4. The Majority's position as to RP § 8-401(h)(1) is based on the 9-page brief of Petitioner, in which Petitioner argued, as a second issue (that the Majority elected to address first), that the language of Section 3.5 was a "waiver of [the] right to redeem." Because the Majority's position with respect to RP § 8-401(h)(1) would result in an entirely different outcome of the case than the points on which it decided the matter—namely, that the judgment of the District Court must be vacated because a summary ejectment action cannot be predicated on charges that the tenant learns of for the first time after suit is filed and that under RP § 8-401(e)(5) Respondent was entitled to the opportunity to pay any amount due before adjournment of the trial—the Majority's view is *dicta,* and nothing more. See Maj. Slip Op. at 1-2, 28.

The *dicta* offered by the Majority essentially sets up the situation that, where parties purport to include language in nonresidential lease agreements waiving the post-judgment statutory right to redemption in a summary ejectment proceeding under RP § 8-401(h)(1),

the Majority's conclusion that such a waiver is not against public policy may be viewed as precedent, when it should not be.

I would hold that the language in Section 3.5 of the Lease does not constitute a waiver of the tenant's right under RP § 8-401(h)(1) to redeem the property after judgment but before execution of the eviction order, or a waiver under RP § 8-401(e)(5) to satisfy the complaint by making a payment immediately upon determination of the amount due either at trial or the adjournment of trial. Section 3.5 of the Lease unambiguously provides that the tenant waives its right to redeem the property from any summary ejectment or unlawful detainer proceeding, meaning that once either a summary ejectment or unlawful detainer proceeding has begun, the tenant has waived a right to redeem the premises during such a proceeding, before entry of judgment. I would hold that the Lease does not contain a provision indicating that the tenant waives the post-judgment right to redeem the property under RP § 8-401(h)(1). Given the unambiguous nature of the contract language, I would affirm the judgment of the circuit court as to question 2 but for different reasons than those determined by the circuit court.[7]

_____

[7]Even though Respondent has not contested the interpretation of Section 3.5, if the language in the section had been determined to be ambiguous, remanding the case to the circuit court for an inquiry into the parties' intent and understanding of Section 3.5's language at the time that the contract was entered into would have been warranted. In that circumstance, any ambiguity in the language of the agreement, not clarified by extrinsic evidence, would have been construed against the landlord, as the drafter of the agreement. See Impac Mortg. Holdings, Inc., 474 Md. at 509, 255 A.3d at 97. The Majority, however, determined that the language in Section 3.5 concerning waiving the right to redeem the premises from a summary ejectment or unlawful detainer proceeding "refers to" the tenant having waived the post-judgment statutory right of redemption under RP § 8-401(h)(1). Maj. Slip Op. at 11 n.3.

- 14 -

For the above reasons, respectfully, I concur and dissent.

Justice Eaves has authorized me to state that she joins in this opinion.

---

Although the Majority is satisfied to conclude that the language of Section 3.5 "refers to" a waiver of the post-judgment statutory right to redemption under RP § 8-401(h)(1), Maj. Slip Op. at 11 n.3, our principles of contract interpretation demand more. See Impac Mortg. Holdings, Inc., 474 Md. at 507, 255 A.3d at 96 ("The court is to give effect to the plain meaning of the contract, read objectively, regardless of the parties' subjective intent at the time of contract formation[,]" but where a term is susceptible to more than one meaning, *i.e.*, is ambiguous, "the court may consider extrinsic evidence to ascertain the mutual intent of the parties" and "is to consider admissible evidence that illuminates the intentions of the parties at the time the contract was formed." (Citation modified)).

Circuit Court for Frederick County
Case No. C-10-CV-24-000717
Argued: January 5, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 33

September Term, 2025

_____

KAPNECK 14-16, LLC

v.

BKEEZY'S SPEAKEASY, LLC

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Concurring and Dissenting Opinion by
Killough, J.

_____

Filed: April 29, 2026

## I.

I respectfully concur with the Court's holding that RP § 8-401(c)(1)'s pre-suit notice requirement applies only to residential tenancies, and I agree with the Court that many of the charges on which the landlord relied were not "due and unpaid" when the complaint was filed. Though, as the Court correctly reasons, the lease here provides additional support to the tenant's arguments, I would add only that the right to notice before summary ejectment does not depend on the terms of the lease the landlord drafted. In *University Plaza Shopping Center, Inc. v. Garcia*, 279 Md. 61, 67 (1977), we held that a charge may constitute rent for purposes of § 8-401 only if it is "definitely ascertained." That requirement inheres in the statute itself and in the common-law meaning of rent. A charge the tenant has never seen is not definitely ascertained—regardless of what the lease says about when it becomes "due." On this record, the tenant first encountered the attorneys'-fees affidavit and the late-fee ledger at trial. Same day notice is no notice at all. I would affirm the circuit court on this ground alone.

## II.

In my view, the notice deficiency should have resolved this case. A commercial tenant did not receive proper notice of the additional rent charges that formed the basis of the landlord's summary ejectment action. That defect required the circuit court to vacate its judgment and remand for a proper calculation. I would not have gone any further. But since the Court holds that a waiver of redemption clause in a commercial lease may be enforced to deny a tenant the statutory right of redemption after a judgment for possession, I respectfully dissent.

## A.

As a threshold matter, Section 3.5 of the lease, properly construed, does not waive the post-judgment right of redemption mandated by RP § 8-401(h)(1).[1] Notably, Section 3.5 waives the right to redeem the Premises "from any summary ejectment or unlawful detainer proceeding"—it says nothing about redeeming the Premises from a *judgment*. The statutory right of redemption under § 8-401(h)(1), by contrast, is triggered only "where the landlord is awarded a judgment giving the landlord restitution of the leased premises." If the landlord intended to have the tenant waive its post-judgment right of redemption, the operative word would have been "judgment," not "proceeding." The Court does not address this textual distinction. It observes that the parties litigated this case on the premise that Section 3.5 applies to § 8-401(h)(1) and concludes without explanation that, under the objective theory of contract interpretation, "the phrase 'right to redeem' in the Lease's waiver clause refers to the 'right of redemption' in RP § 8-401(h)." Maj. Slip. Op. at 11 n. 3. But contract interpretation is a question of law for this Court, not a matter of party stipulation. Because Section 3.5, by its own terms, waives a right to "redeem" the Premises

---

[1] RP § 8-401(h)(1) provides, "Subject to paragraph (3) of this subsection, in any action of summary ejectment for failure to pay rent where the landlord is awarded a judgment giving the landlord restitution of the leased premises, *the tenant shall have the right to redemption* of the leased premises by tendering in cash, certified check, or money order to the landlord or the landlord's agent all past due amounts, as determined by the court under subsection (e) of this section, plus all court awarded costs and fees, *at any time before actual execution of the eviction order*." (Emphasis added). RP § 8-401(h)(3) provides that a tenant who has had three or more prior judgments of possession entered against them in the preceding twelve months loses the right of redemption.

from a *proceeding*—not from a *judgment*—it does not reach the post-judgment right of redemption under § 8-401(h)(1) and is thus without operative effect in this case.[2]

**B**.

Even if one were to assume that Section 3.5 of the lease could reach a post-judgment right of redemption under RP § 8-401(h)(1), that clause would be unenforceable. Our decision in *Copinol Restaurant Inc. v. 26 North Market LLC*, 491 Md. 246 (2025) is dispositive. *Copinol* held that a landlord cannot "contractually modify statutory terms to avail themselves of judicial processes or remedies in a manner inconsistent with the plain language of the statute providing such a right." 491 Md. at 299. In reaching this decision, this Court appropriately explained that a landlord "could not expand the scope of [a] special statutory remedy through the terms of the leases it imposes on tenants." *Id.* at 301 (citing *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 650 (2024)) (internal quotation marks omitted).

Though the facts of *Copinol* implicated the tenant holding over statute under RP § 8-402, the opinion explicitly recognized the "interrelationships" of all three expedited remedies available to landlords. *Id.* at 277. Most relevant to the analysis here, *Copinol*'s recognition of the careful balancing of interests the General Assembly struck when

---

[2] Likewise, Section 3.5 does not reach the pre-judgment right to satisfy the complaint under RP § 8-401(e)(5). That provision is not a right of redemption in any technical sense; it is a right to satisfy the complaint by tendering payment *before judgment*. Section 3.5 may have operative effect in an unlawful detainer proceeding under RP § 14-132, which provides no statutory right of redemption. There, the clause's language, waiving the right to redeem from the proceeding, applies naturally. But that is a question for another day.

3

designing these expedited statutory remedies, one of the central arguments on which the opinion's holding is based, expressly applied to "the trilogy of expedited statutory remedies," including the summary ejection action under RP § 8-401. *Id.* at 288-89 (acknowledging how "the trilogy of expedited statutory remedies" allow landlords to "regain possession of his or her property more efficiently than having to resort to a common law ejectment action and without the possibility that the tenant will be entitled to equitable relief" while "[t]he trade-off is that the tenant has certain statutory protections"). Be it a tenant holding over action under RP § 8-402, a summary ejectment action under RP § 8-401, or a breach of lease action under RP § 8-402.1, the principle is clear: once a party invokes a state-created possessory remedy, a private agreement cannot be used to defeat the statute's remedial protections unless the General Assembly has plainly authorized that result. *See id*. at 299.

The Court argues that *Copinol* dealt with a different problem and distinguishes it on the ground that the landlord there modified the "*elements*" of the statutory action, whereas here the waiver merely alters "post-judgment consequences." *See* Maj. Slip Op. at 15-16 (emphasis added). That distinction has no practical meaning. The Court offers no principle for determining where modifying a statutory element ends and eliminating a statutory protection begins—no test, no criteria, no example of where the line falls in a future case. It also never explains *why* that distinction matters and provides no useful guidance to the landlord, the tenant, or the trial court that must apply it. It simply asserts that *Copinol* was about "elements" not about "protections," and therefore *Copinol* does not apply. Maj. Slip. Op. at 15.

4

What the Court's distinctions elide is that the statutory prerequisites at issue in *Copinol* serve a similar purpose as the tenant's right of redemption at issue here. Under RP § 8-402(b)(2), the relevant provision in *Copinol*, a landlord can succeed in a tenant holding over action only after meeting the following prerequisites: (1) "the landlord had been in possession of the leased property," (2) the "tenancy is fully ended and expired," (3) "due notice to quit" has "been given to the tenant or person in possession[,]" and (4) "the tenant or person in possession" has "refused so to do[.]" *Copinol*, 491 Md. at 296 (emphasis omitted). *Copinol* prohibited landlords from *contractually modifying* these statutorily mandated prerequisites in their favor and subsequently bringing an ejectment action. *Id.* at 257, 299. Allowing landlords to modify these elements, ones designed to protect tenants and serve as a backstop in an otherwise aggressive judicial process available to landlords, would amount to an expansion of "the scope of this special statutory remedy through the terms of leases [a landlord] imposes on tenants." *Id.* at 301 (internal citation and quotation marks omitted). And thus, though there was no language in RP § 8-402(b)(2) explicitly prohibiting the contractual modification or waiver of these elements, this Court in *Copinol* nonetheless forbade it. *Id.* at 257, 299-300 (internal citation marks and quotation marks omitted).

Similarly, the right of redemption in this case under RP § 8-401(h)(1) protects the tenant in an otherwise aggressive summary ejectment action. In other words, it serves as a backstop to the landlord's right to repossess the premises with the help of the courts. Allowing the landlord here to require the tenant to forego the statutorily imposed right of redemption as a condition of the lease is, in effect, allowing the landlord to "expand the

5

scope of this special statutory remedy through the terms of leases it imposes on tenants[,]" a practice *Copinol* foreclosed. *See Copinol*, 491 Md. at 301.

The right of redemption is not a collateral consequence of the summary ejectment proceeding. It is the General Assembly's counterweight to the severity of the remedy. Section 8-401 authorizes the State to physically dispossess a tenant five days after a complaint is filed with no discovery and no continuance as of right. Md. Rule 3-711; RP § 8-40(e)(1). The right of redemption ensures that even after judgment, the tenant may cure the default and keep the premises. RP § 8-401(h)(1). That window between the judgment and the physical eviction exists for a reason. It gives the tenant time to gather funds, arrange financing, or pursue an appeal while preserving the leasehold. For a commercial tenant operating a small business, it is the difference between keeping the enterprise and losing it. Strip away that counterweight by private agreement and the proceeding is no longer the balanced mechanism the General Assembly designed. *See Copinol*, 491 Md. at 288 (describing expedited statutory remedies as "embody[ing] the General Assembly's policy judgements, which carefully balance the landlord's interests in regaining possession in a swift and efficient manner and the tenant's interests in ensuring that any forfeiture of the tenancy is fair and equitable").

Nowhere does RP § 8-401 expressly state that the right of redemption may be waived by contract. As we held on *Copinol*, plain authorization from the General Assembly is needed before a private agreement may defeat a carefully crafted statutory protection. *See Copinol*, 491 Md. at 297. Bestowing a landlord with the authority to modify or waive a legislatively designed protection, whether it is embedded within pre-suit

6

conditions or post-judgement relief, "leads to an illogical result that is wholly inconsistent with the comprehensive expedited statutory remedies framework enacted by the General Assembly." *Id.*

This is especially true here given the fact that § 8-401 is a statute in derogation of the common law. Section 8-401 replaced the "time-consuming" and "cumbersome" common-law ejectment action with an expedited statutory procedure. *Velicky v. Copycat Building LLC*, 476 Md. 435, 450 (2021). Such statutes are strictly construed. *Cosby v. Dep't of Human Resources*, 425 Md. 629, 645 (2012) ("[s]tatutes in derogation of the common law are strictly construed" (internal quotations and citation omitted) (alteration in original)). They are not confined or expanded by implication, and their scope is limited to what the legislature expressly authorized. A party who invokes a special statutory remedy takes it as the legislature wrote it—conditions and all. The Court's approach inverts this principle: it treats legislative silence as permission for the landlord to strip away a statutory protection by contract. That is not strict construction.

The landlord in *Copinol* tried to alter a statutory prerequisite that limited the scope of an expedited remedy available to it. The landlord here seeks to eliminate a statutory protection that also limited the scope of such an expedited remedy. The mechanism differs; the problem is the same. In both cases, a private party invokes the State's judicial machinery to summarily evict a tenant and asks the court to enforce a contractual term the

7

landlord imposed on that tenant—a term that is inconsistent with the statute's own framework. *Copinol* said no. So should we.[3]

## C.

The Court draws a negative inference from RP § 8-208, which prohibits waivers of statutory rights in residential leases. From the absence of a comparable commercial provision, the Court concludes that the General Assembly intended to permit commercial waivers. The inference proves too much. Section 8-208 is a comprehensive consumer protection provision governing residential tenancies—it prohibits waivers of statutory rights, confessions of judgment, jury trial waivers, and authorizations for landlord self-help. *See* RP § 8-208(d)(2)–(6). Its silence as to commercial leases tells us the General Assembly did not enact a comparable omnibus commercial provision. It does not tell us that the General Assembly intended every protection in Title 8 to be individually waivable in a commercial context.

Moreover, the General Assembly has demonstrated in this very statute that it knows how to distinguish between residential and commercial tenancies when it intends to do so. It drew precisely that line in RP § 8-401(c)(1) for pre-suit notice. It did not draw it for the right of redemption. The right of redemption appears in RP § 8-401(h) without any

---

[3] The Petitioner argues that invalidating the waiver would incentivize landlords to resort to the "discouraged" common-law remedy of self-help. I disagree. Section 8-401 was designed to give landlords a judicial alternative to self-help, and the statute's protections are the conditions the legislature attached to that alternative. By the Petitioner's logic, invalidating the waiver of any of the limitations the General Assembly put on the summary ejectment process with respect to landlords would incentivize this class of parties to resort to the common-law remedy of self-help.

residential or commercial distinction. It applies to all tenants. I am hopeful that the General Assembly will review this provision and make explicit what I believe is already apparent from the text and structure of the statute—that the right of redemption is not subject to contractual waiver.

*      *      *      *

I would affirm the judgment of the Circuit Court for Frederick County. The circuit court reached the right result—vacatur of the District Court's non-redeemable possession order—even though it relied on the wrong statutory provision. On this record, the landlord failed to establish that the additional-rent charges on which it relied were "due and unpaid" within the meaning of RP § 8-401 at the time the complaint was filed. The lease, properly construed, does not waive the post-judgment right of redemption. And even if it did, *Copinol* forecloses enforcement of that waiver.